of the brig attached to her; if in crossing the bar this appendage, by reason of any perverse current or eddy, or obstruction, had disturbed the steerage of the Alhambra, and brought her into troubles, that her policy of insurance would have been forfeited, and that any loss that would have occurred, would have been thrown upon the owners. In this connection, it is proper to bring to view the facts that the steamer was worth from one hundred and forty to one hundred and fifty thousand dollars, and her cargo estimated at two hundred and fifty thousand to three hundred and fifty thousand dollars, and the expense of running such a vessel three times as much as a sailing vessel of the same tonnage. The engines of the Alhambra were worth from twenty-five to thirty thousand dollars, and were of three hundred and forty horse-power. The peculiar claim to consideration in the apportionment of salvage, on the part of the owners, is based on the fact that the salving vessel was a steamer, and a "large steamer," and that there was risk to the large property invested in her and her cargo, which the owners were responsible for. The vessel was a much more costly instrument than the Solway steamer, and the risk, though very slight, was something to the vessel and cargo. On these grounds, instead of one-half, the undersigned feels warranted, and thinks it just that the owners should receive three-fifths of the salvage, and the master, officers, and crew two-fifths thereof, and he so awards. And in assigning the two-fifths to the officers and crew, though they did not put forth any peculiar effort, and were subject to no peculiar hardship in this particular case, they nevertheless, as in the instance of the officers and crew of the Solway steamer, did all that was necessary, and their whole duty. The responsibility was on the captain and pilot to wisely govern this noble ship, and on the engineers, firemen, and sailors to skilfully work her grand machinery. They were the true salvors, and this great ship was committed to them by the law and the well-founded policy of all nations, as the instrument to accomplish their beneficent work. They were both necessary and indispensable to the result. If the reward for the special service.is large and liberal, it should be remembered that it was achieved on the theatre of which the mariner alone knows the terrible perils, the unequalled hardships, and the constant anxieties. He had reached the spot to do this very service through a gale which had rendered helpless his brother sailors, and nearly wrecked their vessel and drowned them. Every owner of the property committed to sea, every shipowner especially, is interested in the last degree in seeing to it that the law of salvage be maintained in its strictness. and that the mariner should have the most liberal reward for his services; and if he comes to luck, should be glad of it; and if there be any perquisites in his hard life, should rejoice at it, and see that he gets them. And if this case, both as to the owners and the master and the crew, should partake of this character, it will not be matter of regret either as to the owner, who, at such cost, has put such a noble ship on the ocean, subject to the thousand risks of the sea, or as to the master, pilot, and crew, who, living a life of hardship, have, as in this case, in perfect fidelity and prudence, done their whole duty to their owners and all the interests committed to their care.

[In a special award, the referee will make the allotments of the master, officers, and crew of the Alhambra. He cannot sign this paper without making the acknowledgment that the eminent counsel engaged in this cause, Pringle & Porter for the owners, and Mr. Magrath for the officers and crew, in their ample and learned citation of authorities, and their acute and able expositions of the law and its philosophy, have left him nothing to attempt but to weigh their suggestions and hold the scales between them. He has given to all their citations of the law the most careful consideration, and endeavored to profit by their argument, urged with marked zeal, ability and eloquence. In a case of novel impression without precedent, he has endeavored to hit the truth and do exact justice—so hard to do under such circumstances, and when done so difficult to commend to the judgment of all. His best, anxious, earnest endeavor to attain this result is in the award he has made.][1]

## Case No. 3,526.

### The CYANE.

[The case reported under above title in 4 Amer. Law Rev. 769, is the same as Case No. 7,381.]

CYANE, The, (JOHNSON v.). See Case No. 7,381.

## Case No. 3,527.

### The C. Y. DAVENPORT.

[3 Ben. 63.][2]

District Court, S. D. New York. Dec. Term, 1868.

#### COLLISION—TOWBOAT.

1. Where a steam-tug took in tow a schooner, to tow her out from a pier, next to which was a high balance dock, which shut off the view to the west, and, when the schooner got just clear of the pier, another tug was seen coming from the west with a barge in tow, which came in collision with the schooner: *Held*, that the tug having the schooner in tow was negligent, and liable for the collision.

2. That, even if the other tug and the barge were in fault, that would not diminish the liability of this tug, especially as those vessels were not joined in this action.

---

[1] [From 2 Am. Law Rev. 259.]
[2] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]